**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Youssef SALEH (88–1200), Hassan Serhan (88–1230), Defendants–Appellants.**

Nos. 88–1200, 88–1230.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1988.

Decided May 18, 1989.

Rehearing and Rehearing En Banc Denied in No. 88–1200 July 5, 1989.

J. Daniel McCurrie (argued), James C. Mitchell, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, Mich., for U.S.

Paul Borman (argued), Federal Public Defenders Office, Detroit, Mich., for Youssef Saleh.

Francisco J. Villarruel (argued), Detroit, Mich., for Hassan Serhan.

Before MERRITT and RYAN, Circuit Judges; and POTTER, District Judge.*

RYAN, Circuit Judge.

In consolidated appeals, defendants-appellants Youssef Saleh and Hassan Serhan seek reversal of their convictions for attempting the unreported export of United States currency in excess of ten thousand dollars, a violation of 31 U.S.C. §§ 5316 and 5322. They argue

1) that they were improperly charged under a "fatally defective" duplicitous indictment which improperly charged two separate offenses "against two separate persons in a single count," in violation of Fed.R.Crim.P. 8(a), and

2) that the district court abused its discretion in refusing to sever the defendants' cases for trial because their joint indictment violated Fed.R.Crim.P. 8(b).

We agree that the indictment improperly joined the defendants; however, we find that no prejudice arose from the joint indictment or resulting joint trial. Consequently, we affirm.

I.

On September 17, 1987, customs inspectors at Detroit's Metropolitan Airport arrested both Youssef Saleh and Hassan Serhan as they attempted to board a Brit-

---

* The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

ish Airways aircraft bound for London, England. When they were arrested, each was carrying in excess of ten thousand dollars in unreported United States currency. The government charged both defendants in the same single count indictment with failure to report the export of monetary instruments in violation of 31 U.S.C. §§ 5316 and 5322. The indictment read:

THE GRAND JURY CHARGES:

### COUNT ONE

(31 U.S.C. § 5316—Failure to Report Export of Monetary Instruments)

That on or about September 17, 1987, in the Eastern District of Michigan, Southern Division, defendants YOUSSEF SALEH and HASSAN SERHAN were each knowingly about to transport monetary instruments of more than $10,000 at one time, from a place in the United States to a place outside the United States, and, defendants willfully failed to file a report of that export as required by Title 31, United States Code, Section 5316, all in violation of Title 31, United States Code, Sections 5316 and 5322. The monetary instruments about to be transported by defendants may be seized and forfeited to the United States Government pursuant to Title 31, United States Code, Section 5317.

At defendants' request, the court struck the last sentence of the indictment as surplusage. The defendants' motions to dismiss the indictment as duplicitous and to sever the trial were denied.

The evidence adduced at their joint jury trial indicated that Saleh and Serhan, both experienced international travelers, had entered the United States together on September 11, 1987, and were attempting to leave together when they were arrested. When they arrived in Detroit, both were exposed to the statutory currency reporting requirement through English and Arabic warnings appearing in the customs declarations provided on the plane and displayed prominently on posters in the airport. Both were required to walk past the same posters when they attempted to leave.

Different customs inspectors stopped each of the men at the same time and place in the airport. The inspector who stopped Saleh orally informed him of the federal currency reporting requirement, after which Saleh responded: "$10,000, no I do not have." Upon further questioning he twice told inspectors that he carried $9,000. A search of his clothing turned up $15,237.

A second inspector orally informed Serhan of the currency reporting requirement and also handed him a warning written in Arabic detailing the requirement. Serhan denied having more than $10,000, eventually telling the inspectors he carried $6,000. A search of his clothing revealed $10,135.

## II. Rule 8(a)

Appellants first argue that the district court should have dismissed the indictment because it was "defective on its face." The claimed defect is that the indictment is duplicitous and in violation of Fed.R.Crim. P. 8(a)[1] because it charges two separate offenses in a single count; one against each of the defendants. *See United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir.), *cert. denied*, 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981).

The familiar rule prohibiting duplicitous pleading that was addressed in *Robinson* is that an indictment may not join in a single count two or more distinct and separate offenses. *United States v. Ellis*, 595 F.2d 154 (3d Cir.1979).

The vice of duplicity is that a jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense. *United States v. UCO Oil*, 546 F.2d 833 (9th Cir.1976), *cert. denied*, 430

---

1. Fed.R.Crim.P. 8(a) provides:

Two or more offenses may be charged in the same indictment or information *in a separate count for each offense* if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(Emphasis added.)

U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

We reject the defendants' Rule 8(a) argument for two reasons. First, as *Robinson* and *UCO Oil* make clear, the rule prohibiting duplicitous pleading in a criminal case is designed to preclude a jury from convicting a defendant under a single count indictment which charges more than one offense without agreeing, unanimously, on the defendant's guilt of the same offense. That could not have occurred in this case because here the single count indictment grouped defendants rather than multiple offenses against a single defendant.

Second, case law firmly establishes that the propriety of joinder of multiple defendants in an indictment is tested under Rule 8(b), not under Rule 8(a). *United States v. Franks*, 511 F.2d 25 (6th Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975); *United States v. Jackson*, 562 F.2d 789 (D.C.Cir.1977); 1 C.W. Wright, *Federal Practice and Procedure*, § 144, at 494 (2d ed. 1982). Rule 8(a) is inapplicable here.

### III. Rule 8(b)

Appellants also argue that the indictment violates Rule 8(b), and that the joint trial that resulted from the alleged 8(b) violation was prejudicial.

Rule 8(b) permits multiple defendants to be charged in a single indictment and tried together "provided [the defendants] are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." For example, under Rule 8(b) courts may properly join in an indictment defendants charged with participation in a single conspiracy. *United States v. Warner*, 690 F.2d 545, 551 (6th Cir.1982). But under the liberal construction given the rule, it is not essential for the government to charge a conspiracy in order to prosecute two defendants in a single trial, provided sufficient connection exists between their acts to support joint indictment. *United States v. Russo*, 480 F.2d 1228,

1238 (6th Cir.1973), *cert. denied*, 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974).

Nevertheless, even a liberal construction of Rule 8(b) does not support the government's argument that joint indictment was proper in this case. The proofs at trial indicated only that each defendant violated the *same statutes* at the same time and place. It was not necessary to either case, and the prosecution did not prove, that these defendants conspired or otherwise participated *jointly* in any proscribed *conduct*. The only alleged joint activity in these cases involved sitting side-by-side on airliners and traveling together within this country—none of which was legally offensive. On these facts we hold that joint indictment violated Rule 8(b); therefore, the defendants' motions to sever should have been granted. That does not conclude the matter, however, because misjoinder under Rule 8 is subject to the harmless error analysis of Rule 52(a). *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

Under Rule 52(a), harmless error analysis focuses on whether an error "affect[ed] substantial rights." *Lane* held that "an error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" 474 U.S. at 449, 106 S.Ct. at 737 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

We are convinced that neither the joint indictment nor the joint trial that followed prejudiced either defendant's right to a fair trial. The trial judge repeatedly admonished the jury to separate the offenders and their offenses, to consider separately the evidence admissible against each one, and to assess separately each defendant's culpability.

Moreover, the evidence of guilt in these simple cases was so overwhelming that a jury could not have been confused by the joint indictment or trial despite the prosecution's improper characterization of the facts as a crime committed by two men

attempting to export $25,000. 31 U.S.C. § 5322 subjects a person who willfully violates any provision of Chapter 53 to criminal liability. The defendants were accused of violating Chapter 53's currency reporting requirement set out at 31 U.S.C. § 5316. Thus, the only issue for trial in this case was whether each defendant specifically intended to evade the statutory reporting requirement. The government was obligated to prove that each defendant knew of the requirement and knew that he was carrying sufficient currency to subject himself to the requirement. That burden was so easily carried on the facts of this case that no rational juror could have been confused. In Saleh's case, agents found the defendant to be carrying $15,237. With respect to knowledge of the reporting requirement, it was shown that Saleh walked past numerous posted warnings, was given an oral warning prior to his denial, and even signed a customs declaration during a previous trip that explained the reporting duty imposed by the statute.

The evidence presented against defendant Serhan was equally inculpating. He also carried in excess of $10,000, although he denied having that amount after agents gave him both an oral warning in English and a written warning in Arabic. Finally, Mr. Atat, with whom Serhan stayed while in the Detroit area, testified that he had discussed with Serhan the currency reporting requirement. In neither defendant's case can we say that the jury might have been confused when it held that there was no reasonable doubt that each defendant attempted to evade the legal duty to report.

AFFIRMED.

MERRITT, Circuit Judge, dissenting.

I join only in the majority's holding that defendants' joint indictment violated Rule 8(b) and that defendants' motion to sever should have been granted by the court below. Because I believe, however, that both the joint indictment and the joint trial which followed prejudiced each defendant's right to a fair trial, I respectfully dissent.

After careful review of the transcript of the proceedings below, I cannot find that the misjoinder was harmless. By trying the two defendants together, the jury heard twice of the "routine" warnings when there was evidence that only Serhan received that warning in Arabic; the jury heard repeatedly of the posters in English and Arabic warning of the currency reporting requirement; the jury was told on three occasions of a joint $25,000 violation when Serhan had $10,135, and Saleh had $15,237.

Moreover, the jury instructions do not save this case. Rather they underscore the general confusion in the District Court's mind as to the "jointness" of the crime. The District Judge ruled in his response to the defendants' motion to sever that the two separate and distinct violations charged were "implicitly" part of the same act. Evidence concerning both defendants' knowledge, *i.e.*, evidence of statements made to each by the customs agents and the defendants' response, were admitted generally against both defendants. The jury was free to attribute the knowledge and intent of each defendant to the other, as in a conspiracy case.

The prosecution proceeded on a "jointness" theory. Throughout the trial the prosecution tried to show that the knowledge of one defendant could be inferred from the other. The prosecution repeatedly intermingled evidence against the defendants that would not have been admissible in separate trials.

Since both the District Court and the prosecutor were confused in their treatment of the separateness of the two crimes, I am unable to find that the prosecutorial statements concerning the joint participation of the defendants in a single crime, the intermingling of evidence as it related to the individual defendants, and the inconsistent rulings of the District Court on the motion to sever and on trial motions did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Lane*, 474 U.S. at 449, 106 S.Ct. at 737. It is impossible to say that the jury did not similarly confuse the evidence against one defendant with the evidence against the other. In view of the

confusion, it is even impossible to say that the jury did not in fact convict the two defendants of a joint crime rather than two separate crimes.

For the foregoing reasons, I dissent.